IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD J. LOWE, et al.,
    Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION, AS RECEIVER
FOR NBRS FINANCIAL, et al.,
    Defendants.

Civil Action No. ELH-18-478

**MEMORANDUM OPINION**

    Plaintiffs Donald J. Lowe ("Mr. Lowe"), Joyce J. Lowe ("Ms. Lowe"), and Lowe Services, Inc. ("Lowe Services") (collectively, the "Lowes") lodged a civil action against defendant Federal Deposit Insurance Corporation (the "FDIC") as Receiver for NBRS Financial ("NBRS"). ECF 1 (the "Complaint"). They incorporated by reference the Affidavit of Mr. Lowe. ECF 1-1. Plaintiffs subsequently filed an Amended Complaint (ECF 12), again incorporating ECF 1-1, and naming the FDIC as two defendants: the FDIC in its capacity as Receiver ("FDIC-Receiver") and also in its corporate capacity ("FDIC-Corporate").[1] Plaintiffs seek the release of a lien previously held by NBRS on Mr. and Ms. Lowe's residential property. *Id.* ¶ 5. They also seek damages pursuant to 12 U.S.C. § 1819(a). ECF 12, ¶¶ 3, 6.

    The FDIC-Receiver "in its corporate capacity as attorney-in-fact" for the FDIC, and "as receiver for NBRS," has moved to dismiss. ECF 29. It asserts lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and (2) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). The motion is supported by a memorandum (ECF 29-1) (collectively, the "Receiver Motion") as well as several

---

[1] Although the FDIC is one entity, the parties have treated them as though they are separate entities. I shall adopt the format used by the parties.

exhibits. ECF 29-3; ECF 29-5 to ECF 29-11. FDIC-Corporate also moved to dismiss (ECF 30) (the "Corporate Motion"), asserting lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6). Plaintiffs oppose the Receiver Motion (ECF 34) and the Corporate Motion. ECF 37. Defendants have replied. ECF 36 ("Receiver Reply"); ECF 38 ("Corporate Reply").

The motions are fully briefed and no hearing is necessary to resolve them. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motions.

## I. Factual and Procedural Background [2]

Mr. Lowe is the president and secretary of Lowe Services. ECF 12, ¶ 1. Lowe Services does business as Pioneer Outdoor Equipment, and as Pioneer Maintenance and Repair Service, which contracts for home improvements, small engine repairs, and maintenance for commercial and residential customers. ECF 1-1, ¶¶ 3-5. Lowe Services operated in a commercial building located at 1226 South Philadelphia Boulevard in Aberdeen, Maryland (the "Commercial Property"). *Id.* ¶ 6. Mr. and Ms. Lowe owned the property from November 1999 until 2013, when the property went into foreclosure. *Id.* ¶ 8.

In 2004, Lowe Services allegedly entered a business relationship with NBRS, a bank with branches in Cecil County and Harford County, Maryland. *Id.* ¶ 10. NBRS agreed to refinance an outstanding mortgage on the Commercial Property; the amount of the mortgage was $400,000. *Id.* ¶ 12. It also provided Mr. Lowe with a $150,000 line of credit, which it increased to $350,000 in June 2005. *Id.* ¶¶ 12-13.

---

[2] Given the posture of the case, the Court must assume the truth of plaintiffs' factual allegations. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

2

In 2009, Lowe Services began to struggle financially. *Id.* ¶ 15. To stay afloat, it allegedly employed fewer people and liquidated certain inventory, including equipment. *Id.* ¶ 16. It also accepted additional jobs in home improvement and commercial maintenance. ECF 1-1, ¶ 16. Lowe Services also sought financial assistance from NBRS. *Id.* ¶ 17. In response, NBRS offered to extend the maturity of the credit line. *Id.* In 2011, it also offered to roll the credit line into the mortgage on the Commercial Property, increasing Lowe Services' total debt to $755,000. *Id.* NBRS also further secured the mortgage by recording a lien on Mr. and Ms. Lowe's personal residence in Churchville, Maryland. *Id.* ¶ 17.

In that same year, Mr. Lowe entered a contract to sell the Commercial Property. *Id.* ¶ 18. However, the buyer withdrew from the sale in October 2012, just two months before closing. *Id.* As a result, plaintiffs were unable to make rental payments on a biodiesel system that it leased from Balboa Capital Corporation. *Id.* ¶¶ 14, 20. Moreover, plaintiffs were unable to make their mortgage payments on the Commercial Property. *Id.* ¶ 20.

As a result, on August 26, 2013, NBRS initiated foreclosure proceedings. *Id.* ¶ 22. NBRS also blocked Mr. Lowe's access to the Commercial Property. *Id.* ¶¶ 23, 27. In addition, NBRS seized the Lowes' business records, equipment, and tools. *Id.* ¶ 24; *see also id.* ¶¶ 25-26 (listing the seized tools and the seized physical and digital business records). In 2013, after Mr. Lowe unsuccessfully attempted to negotiate a refinancing with NBRS, he filed for Chapter 13 bankruptcy relief, thereby staying the foreclosure. *Id.* ¶ 32.

On October 17, 2014, NBRS was closed by the Maryland Office of the Commissioner of Financial Regulation, and the FDIC was named as Receiver for NBRS. *Id.* ¶ 36. Plaintiffs allege that the FDIC-Receiver assumed NBRS's financial assets, including the Commercial Property and the lien on Mr. and Ms. Lowe's personal residence. *Id.* ¶ 37.

Mr. Lowe filed an administrative claim with the FDIC-Receiver on November 27, 2014, seeking $30,000,000 for the financial losses suffered by his businesses. ECF 29-5; *see also* ECF 29-6. A month later, on December 29, 2014, the Lowes filed suit against the FDIC-Receiver in this District. *Lowe v. FDIC*, JKB-14-4024 (D. Md. Dec. 29, 2014); *see* ECF 29-8. In a letter dated January 23, 2015, the FDIC-Receiver requested additional documentation from Mr. Lowe to substantiate his claim against the receivership. ECF 29-6. That letter provided that if the requested documentation was not received by February 23, 2015, Mr. Lowe's claim would be disallowed. *Id*.

Mr. Lowe failed to provide the required documentation. Therefore, the FDIC-Receiver disallowed his claim, by notice of July 20, 2015. ECF 29-7. The notice also advised Mr. Lowe that he could challenge the disallowance in a lawsuit. *Id*. And, the FDIC-Receiver advised Mr. Lowe that if, within 60 days of the notice, he did not file a lawsuit or continue any previously filed lawsuit, the disallowance of his claim would be final, pursuant to 12 U.S.C. § 1821(d)(6)(B)(ii). ECF 29-7 at 1.

Because plaintiffs had already filed a lawsuit against the FDIC-Receiver, they were permitted to continue their suit, which was pending in this District before Judge James K. Bredar. *See* ECF 29-11. However, plaintiffs did not serve that suit on the FDIC-Receiver. As a result, by order of July 24, 2015, Judge Bredar directed plaintiffs to show cause as to why their suit should not be dismissed for failure to prosecute. *Id.* On August 10, 2014, plaintiffs moved for leave to amend their complaint. *See Lowe*, JKB-14-4024, ECF 15. Judge Bredar denied the motion on August 14, 2015, and dismissed the case, without prejudice, under Fed. R. Civ. P. 41(b) and Local Rule 103.8. ECF 29-9. From that time until plaintiffs filed the instant action on February 15,

2018, plaintiffs appear to have taken no further legal action in pursuit of their suit or the underlying administrative claim

In June 2016, NBRS agreed to release its lien on Mr. and Ms. Lowe's personal residence, upon the sale of the Commercial Property. ECF 1-1, ¶ 33; *see* ECF 29-8, ¶¶ 139-40. This release was entered in the Bankruptcy Court by a consent order dated June 8, 2016. ECF 1-1, ¶ 33. On May 16, 2016, the FDIC-Receiver sold the Commercial Property at auction for $325,000. ECF 1-1, ¶ 46. According to plaintiffs, the sale price was less than one-third of the Commercial Property's appraised value in 2011. *Id.* ¶¶ 19, 46.

In August 2017, Mr. Lowe was notified that the auction sale of the Commercial Property did not satisfy his debt and that he owed $172,396.31 on the debt to "Republic Credit One, L.P., Republic Credit Corporation, General Partner," which had allegedly purchased his debt from the FDIC-Receiver. *Id.* ¶ 43. Further, Mr. Lowe states that NBRS's lien on his home has not been removed and has impeded his ability to obtain refinancing. *Id.* ¶ 50.

Plaintiffs allege that NBRS and later FDIC-Receiver failed to sell the Lowes' equipment and business tools. *Id.* ¶¶ 44, 49. Instead, they allegedly left the equipment and tools unattended for two years, resulting in their theft. *Id.* ¶ 44.

Additionally, plaintiffs allege that on multiple occasions Mr. Lowe requested that NBRS and FDIC return the leased biodiesel system, which was located on the Commercial Property. *Id.* ¶¶ 27-28, 40, 45. Both entities refused to allow him to remove the biodiesel system. *Id.* Additionally, Scarpulla Enterprises Inc., which had purchased the Commercial Property at auction, also refused to allow Mr. Lowe to retrieve the system. *Id.* ¶¶ 47-48. As a result, he has been unable to retrieve it. *Id.* ¶ 51.

Plaintiffs seek over $1.5 million dollars in damages from the FDIC. ECF 12, ¶ 3. They claim that the FDIC seized tools, equipment, and records, resulting in damages totaling $463,250. *Id.* Further, plaintiffs allege that the FDIC is responsible for the "shortfall in sale price" of the Commercial Property, resulting in damages totaling $975,000. *Id.* Moreover, plaintiffs seek $275,000 in damages for FDIC's alleged failure to take "all efforts to return a biodiesel system to either Balboa Capital" or the Lowes. *Id.*

## II.    Standard of Review

As noted, both FDIC-Receiver and FDIC-Corporate have moved to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.[3]

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction. *See Demetres v. East West Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also The Piney Run Preservation Ass'n v. Cty. Comm'rs of Carroll Cty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008); *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true.'" *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States*, 736 F.3d 296, 300 (4th Cir. 2013). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion

---

[3] In light of my disposition, I need not address FDIC-Receiver's motion under Rule 12(b)(2).

must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192. On the other hand, in a factual challenge, "the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Id.* In that circumstance, the court "may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347-48 (4th Cir. 2009); *Evans*, 166 F.3d at 647. Both the FDIC-Receiver and the FDIC-Corporate raise a facial challenge to the Court's subject matter jurisdiction, based on the four corners of the Amended Complaint.

### B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts

7

sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 2019 WL 1105179, at *3 (4th Cir. Mar. 11, 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, *Miss.*, 574 U.S. ___, 135 S. Ct. 346, 346 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440

(4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards,* 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman* ).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the

'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). The court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 08 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or

incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id*.

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, ___ U.S. ___, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Moreover, in the context of a motion to dismiss, "[a] court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n. 3 (D. Md. Aug. 20, 2015), aff'd, 639 Fed. Appx. 200 (4th Cir. May 6, 2016); *cf. Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n. 1 (4th Cir. 1990) (holding that a district court

may "properly take judicial notice of its own records"). However, "these facts [must be] construed in the light most favorable" to the non-movant. *Clatterbuck v. City of Charlottesville,* 708 F.3d 549, 557 (4th Cir. 2013) (*abrogated on other grounds* by *Reed v. Town of Gilbert, Ariz.*, 576 U.S. ___, 135 S. Ct. 2218 (2015), as recognized in *Cahaly v. Larosa*, 796 F.3d 399 (4th Cir. 2015)). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

As noted, plaintiffs have attached Mr. Lowe's Affidavit (ECF 1-1) to the Complaint. In their Amended Complaint, they explicitly incorporated the Affidavit by reference. *See* ECF 12, ¶ 4. Accordingly, I may consider the Affidavit. *Goines*, 822 F.3d at 166 (citation omitted).

The FDIC-Receiver submitted several administrative filings as exhibits to the Receiver-Motion. *See* ECF 29-3; ECF 29-5 to ECF 29-11. Specifically, defendant attached a Certificate of Termination (ECF 29-3), a public filing stating that the FDIC's receivership estate for NBRS dissolved effective December 1, 2017. It also attached a copy of the Mr. Lowe's administrative claim with the FDIC-Receiver. ECF 29-5. And, it submitted its Request for Additional Information regarding Mr. Lowe's claim (ECF 29-6) and its subsequent Notice of Disallowance of his claim. ECF 29-7.

In addition, the FDIC-Receiver attached multiple documents from plaintiffs' 2014 suit against the FDIC-Receiver. *See Lowe v. FDIC*, JKB-14-4024. These documents include plaintiffs' complaint (ECF 29-8); an order of January 28, 2015 (ECF 29-10), directing plaintiffs to effect service on the FDIC-Receiver; an order of July 24, 2015 (ECF 29-11), directing plaintiffs to show

cause as to why their suit should not be dismissed for failure to prosecute; and a memorandum dated August 14, 2015 (ECF 29-9), dismissing plaintiffs' suit.

Plaintiffs do not address whether the Court may consider the FDIC-Receiver's exhibits. These exhibits undergird the Amended Complaint insofar as it is implicitly predicated on plaintiffs' administrative claim with the FDIC. As discussed, *infra*, the Court has subject matter jurisdiction over the suit against the FDIC-Receiver only if plaintiffs have complied with the administrative process, pursuant to 12 U.S.C. § 1821. Further, plaintiffs do not dispute the authenticity of the exhibits. Further, as the exhibits are public filings, the Court may take judicial notice of them. Accordingly, at this juncture, I may consider all the aforementioned exhibits, without converting the motions to ones for summary judgment.

### III.  Discussion

#### A.  The Receiver Motion

The FDIC-Receiver argues that this Court no longer has subject matter jurisdiction over plaintiffs' claim because "a claim that is not brought in time for an FDIC receiver to make payment is disallowed and that disallowance is final." ECF 29-1 at 7 (citing 12 U.S.C. § 1821(d)(5)(C)(ii)(II)). Plaintiffs have not responded to this contention. *See* ECF 34.

Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified in Title 12 of the United States Code, in response to the savings and loan crisis of the 1980s. *See Sharpe v. FDIC,* 126 F.3d 1147, 1154 (9th Cir. 1997). "The statute's purpose was to 'provide funds from public and private sources to deal expeditiously' with faltering and failed savings and loans in order to rebuild their financial foundations." *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1002-03 (4th Cir. 1994) (quoting Pub. L. No. 101–73, 103

Stat. 183, § 101). Under FIRREA, the FDIC may "act as receiver or conservator of a failed institution for the protection of depositors and creditors." *Id.*

In addition, "FIRREA provides an administrative scheme for adjudicating claims against failed institutions for which the FDIC has become receiver." *F.D.I.C. v. Martini*, HAR-94-1932, 1995 WL 168139, at *2 (D. Md. Apr. 5, 1995) (citing *Brady Dev. Co.*, 14 F.3d at 1002). As the receiver, the FDIC must "promptly publish a notice to the depository institution's creditors to present their claims . . . to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice." *Id.* § 1821(d)(3)(B)(i). Section 1821(d)(5)(C)(i) states: "[C]laims filed after the date specified in the notice . . . shall be disallowed and such disallowance shall be final." *Id.* However, this clause does not apply if the claimant did not receive notice of the appointment of the receiver or "such claim is filed in time to permit payment of such claim." *Id.* § 1821(d)(5)(C)(ii).

After a claim is filed, the receiver has 180 days to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). "After the receiver's initial decision, or if the receiver makes no decision within the 180-day period, a claimant may file a suit on the claim in one of two designated federal courts, within 60 days of the earlier of (a) the end of the 180-day period in which the receiver may determine the claim, or (b) the date of notice from the receiver that the claim has been disallowed." *Tillman v. Resolution Trust Corp.*, 37 F.3d 1032, 1035 (4th Cir. 1994) (citing 12 U.S.C. § 1821(d)(6)(A)). However, instead of filing a new suit, a claimant "may continue a previously filed action . . . if he had a suit pending against the savings and loan before the savings and loan was placed into receivership." *Brady Dev. Co.*, 14 F.3d at 1003 (citing 12 U.S.C. § 1821(d)(6)(A)(ii)). If a plaintiff fails to pursue an administrative review or judicial determination

14

of its disallowed claim, the disallowed claim is final and the claimant has "no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

Normally, a failure to exhaust is not jurisdictional. *Fort Bend Cty. v. Davis*, ___ U.S. ____, 139 S. Ct. 1843, 1850 (2019). Courts "'have more than occasionally [mis]used the term jurisdictional' to refer to nonjurisdictional prescriptions." *Id.* at 1848 n. 4 (2019) (quoting *Scarborough v. Principi*, 541 U.S. 401, 413 (2004) (internal quotation marks omitted)). And, in recent years, the Supreme Court has cautioned against the "'profligate use of the term.'" *Davis*, 139 S. Ct. at 1848 (quoting *Sebelius v. Auburn Regional Med. Ctr.*, 568 U.S. 145, 153 (2013)). Accordingly, the Court has reiterated: "'If the Legislature clearly states that a [prescription] count[s] as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue[;] [b]ut when Congress does not rank a [prescription] as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Id.* at 1850 (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515-16 (2006)) (alterations in original).

In FIRREA, Congress clearly imposed "jurisdictional limits on the power of the federal courts to review matters involving failed savings and loans" in order "to effectuate [Congress's] goals of managing claims in an expeditious and efficient manner through an administrative process." *Brady Dev. Co.*, 14 F.3d at 1003. In relevant part, FIRREA expressly provides, 12 U.S.C. § 1821(d)(13)(D):

> Limitation on judicial review
>
> Except as otherwise provided in this subsection, no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

15

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

The Fourth Circuit has observed, *Brady Dev. Co.*, 14 F.3d at 1003:

The precise jurisdictional limitations on the Article III courts mandated by FIRREA are determined by reading section 1821(d)(13)(D) in conjunction with the statute's allowance of an action within sixty days of a claim being denied as provided for in section 1821(d)(6)(A). Together these provisions mandate that the district court not hear any claim until it has been rejected by the [Corporation] in its administrative review or until the 180 day administrative review period has expired.

Notably, a party's "failure to exhaust the administrative process" to settle claims under FIRREA "deprives the district court of jurisdiction." *Id.* at 1006; *see also F.D.I.C. v. Abbott*, CCB-12-2111, 2013 WL 4924495, at *4-*5 (D. Md. Sept. 11, 2013) (dismissing counterclaims that defendant had failed to exhaust through the FIRREA's administrative procedure).

In their Amended Complaint, plaintiffs do not rely on their 2014 administrative claim with the FDIC. *See* ECF 12. Nor do they claim that they filed a new administrative claim with the FDIC. *Id.* Indeed, such an administrative claim would be time-barred. *See* 12 U.S.C. § 1821(d)(5)(C)(i). Therefore, plaintiffs have not exhausted the statutorily mandated administrative process under § 1821(d)(6). Accordingly, the Court is deprived of subject matter jurisdiction over plaintiffs' suit against the FDIC-Receiver. *Brady Dev. Co.*, 14 F.3d at 1003.

Nevertheless, even if the instant suit represents a challenge to the FDIC's disallowance of plaintiffs' 2014 administrative claim, the suit fails. After the FDIC disallowed plaintiffs' claim on July 20, 2015, plaintiffs arguably continued their ongoing suit. However, after the suit's dismissal, without prejudice, on August 14, 2015, plaintiffs did not refile before the end of the 60-day period on September 18, 2015. Moreover, plaintiffs did not file the instant suit until over two years after the dismissal and two months after the dissolution of the FDIC's receivership estate for NBRS. As a result, plaintiffs' suit is time-barred, in light of 12 U.S.C. § 1821(d)(6)(A)-(B) as well as the

dissolution of the receivership. *See Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259 (1927) ("[D]issolution of a corporation . . . abates all litigation in which the corporation is appearing. . . so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation."); *Asociacion de Empleados del Area Canalera (ASEDAC) v. Panama Canal Comm'n*, 453 F.3d 1309, 1313-14 (11th Cir. 2006) (dissolved government corporations are not subject to suit unless Congress provides otherwise).

### B. The Corporate Motion

FDIC-Corporate maintains that the Court lacks subject matter jurisdiction over the Amended Complaint, which FDIC-Corporate construes as alleging a tort or takings claim. ECF 30 at 4. In their opposition, plaintiffs clarify that the Amended Complaint does not lodge a tort or takings claim. ECF 37 at 1-2. They further clarify that "no state law provides the source of [the FDIC's] liability." *Id.* at 2. Rather, they assert that they bring their suit under 12 U.S.C. § 1819(a), which states that the FDIC "shall have power . . . To sue and be sued, and complain and defend by and through its own attorneys, in any court of law or equity, State or Federal." In reply, FDIC-Corporate maintains that plaintiffs fail to state a claim as § 1819(a) does not create a cause of action. ECF 38 at 2 n. 2

Section 1819(b)(2)(A) establishes subject matter jurisdiction over suits to which the FDIC is a party. It provides that, with exceptions not applicable here, "all suits of a civil nature at common law or in equity to which the [FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States." Because plaintiffs have lodged a federal claim against the FDIC, their suit arises under federal law, and the Court has jurisdiction over it. *See* 8 U.S.C. § 1331.

Nevertheless, plaintiffs fail to state a claim. Plaintiffs rely on the FDIC's "sue and be sued" clause in 12 U.S.C. § 1819(a). However, a "sue and be sued" clause does not create a cause of action. For example, in *MB Fin. Group, Inc. v. U.S. Postal Serv.*, 545 F.3d 814, 819 (9th Cir. 2008), the Ninth Circuit recognized that the "sued and be sued" clause in the Postal Reorganization Act of 1971 "does not create a cause of action" against the United States Postal Service. Indeed, courts have typically construed such clauses as waivers of sovereign immunity. *Id.*; *F.D.I.C. v. Meyer*, 510 U.S. 471, 481 (1994) ("[A]gencies 'authorized to "sue and be sued" are presumed to have fully waived immunity.'") (quoting *International Primate Protection League v. Administrators of Tulane Ed. Fund*, 500 U.S. 72, 86, n. 8 (1991)).

In *Meyer*, 510 U.S. at 480, the Supreme Court read the "sue and be sued" clause for the FDIC's statutory predecessor, the Federal Savings and Loan Insurance Corporation, as a waiver of sovereign immunity. Therefore, § 1819(a) does not provide a legal basis for plaintiffs' suit. Nor have plaintiffs stated any other legal basis for their suit.

## IV. Conclusion

For the reasons stated above, I shall grant the Receiver Motion and the Corporate Motion. An Order follows.

Date: July 2, 2019

/s/
Ellen L. Hollander
United States District Judge